Scott Clause, U-Haul International, and Oxford Life Insurance Company We're here today because my clients were tried in absentia for 15 days in an unfair labor practice proceeding before an administrative law judge. The government provided my clients no opportunity to be present during the 15 days of a trial during which they were Well, it gave you the opportunity to recall the witnesses and to cross-examine them, and presumably the issue in which you really cared hadn't even been surfaced yet. Respectfully, Your Honor, I disagree with both assertions. On April 27, 2004, the administrative law judge issued a categorical order refusing the new respondents the ability to recall witnesses previously called. I'm sorry? On April 27, 2004. In what order? The administrative law judge, it is the order entered on, I'll get you the record site, Your Honor, if I could, in a moment. The administrative law judge entered an order denying my clients the opportunity to recall witnesses previously called. That was on April 27, 2004. That's a little bit before the order in which he let you do it, which was in May. Your Honor, he didn't let us do it. We specifically Including the right to call those who have already testified? Your Honor, you're reading from the May 20, 2004 order at 132 to 133. Your Honor, that is, I'm sorry, Your Honor, that is from March 2004. I will provide you with the actual record site. That is from March 2004. That comment was made, and that highlights the reason why both the general counsel and the ALJ acted so egregiously in denying my clients due process rights. In its oral order, which Your Honor is reciting, the judge cited key coal, which is a board decision. In key coal, a party was allowed to be added on the second day of hearing. Allowed to be added on the second day, and the judge quoted, contingent upon the newly added respondents being permitted to recall and cross-examine witnesses, being permitted to object to any evidence already introduced, and being permitted to object to any testimony already adduced. That was the legal predicate on which the ALJ added my clients to a 15-day hearing. On April 27, 2004, the court, the ALJ, entered an order specifically, categorically, and I'll read it to you, Your Honor. Where can we find that in the record? It is on E-477, Your Honor. Excerpts to Record 477, and I'll read it for you. Okay, but before that, E-133, I'm not sure which date that is. That is during the oral argument, and I misspoke, Your Honor. It was not in March of 2004. The oral argument, because I was sitting there, the oral argument was February 23, 2004. That's when he said that you would have the right to recall everybody. Exactly, Your Honor. That is when he said we would have that right. But then, when he reduced his order to writing on April 27, 2004, he stated that the respondent's motion to recall previous witnesses, the right to object to all evidence already introduced, and the right to object to previous rulings of the judge, is denied. So my clients really were tried in absentia. And, Your Honor, I didn't address the second point that you raised as a factual predicate to your question, that these issues had not been addressed. That is absolutely not the case. I'm not sure what I said. You have now made that point. The real issue here is whether that even remotely matters. If the Constitution matters. Well, the Constitution does matter. And at the end of the day, if you're correct and if your rights have been denied and if at the end of the day the board hasn't cured the error that you believe it committed, then a court will solve the problem. The question is whether the court jumps in now, contrary to Myers, or waits until the proceeding has been finished and your claim has been exhausted. There is both a pragmatic reason to not wait, in your words, to the end of the day, and a legally principled reason. I'll start with the pragmatic reason. The pragmatic reality is that the trial judge's factual and credibility determinations are irretrievably tainted by evidence that was adduced while my clients were not present. Well, sure. If that's true, you can make that pitch when the proceeding has been concluded. If you lose. What if you win? That goes to the legally principled. You could win. We may win, Your Honor, but that goes. There's no issue. But there is an issue. That is what the courts, a legion of courts have recognized. That when fundamental constitutional issues, when fundamental constitutional rights are deprived, there is always an issue. And the issue is always now. As the court ---- You know what? Let's just not exaggerate. Look. Nobody's talking about denying judicial review or preserving constitutional rights. The question and the only question in this case is when this Court has jurisdiction to consider them. And that answer is provided in ample authority, Your Honor. There are three exceptions. It's not authority that binds us. We're bound by what the U.S. Supreme Court has said, not by what two district courts in Pennsylvania have said. All right? So let's talk about Myers and what the U.S. Supreme Court has said about, in effect, exhaustion. Well, Your Honor, Myers was issued in 1938. Well, it's still good law. I understand, Your Honor, and I wasn't suggesting that it wasn't. In 1938, the issue of the constitutionality of the National Labor Relations Act was at issue with the court. The constitutionality of the act itself. Therefore, when Myers talked about constitutional questions, it talked about the constitutionality of the act itself. Justice Brandeis, in his opinion, explicitly recognized that Myers was not a case where there were procedural constitutional irregularities that were at issue. And the Supreme Court has recognized exceptions to Myers. Leadham v. Kine. McCullough, Sociedad. Neither of which applies here. Leadham v. Kine does apply here, Your Honor. Because? Because in Leadham v. Kine, the United States Supreme Court recognized that when the National Labor Relations Board acts outside of its statutory authority, and when effective judicial review will not be available. Yes, but effective judicial review is available here, whereas it was not in a representation case under Section 9. Effective judicial review is not available, Your Honor. I don't understand that. I mean, I see Leadham and Fay and all those cases saying the courts can intervene as being limited to Section 9 cases where there is no judicial review provision. Here we have a judicial review provision, and it's going to be sooner rather than later, as I understand it, because all the evidence has been taken and the NLRB is about to issue its decision, right? And then you'll have a right to appeal to the Court of Appeals. It is not even clear that the evidentiary record in the NLRB proceeding is closed, Your Honor. There has been a motion to reopen the record in the evidentiary proceeding. All right. But why do you say effective judicial review is not available? Your Honor, you just asked a question of counsel during the last oral argument as to why non-record evidence attached to a motion did not unfairly and unjustly, and I'm using your words, influence the determination of the judge. I don't think I said unfairly and unjustly, but go on. If non-record evidence attached to a motion is unfair in influencing a judge, then 15 days of trial where ex parte evidence is taken where the rights of a party is adjudicated, that's the thing, Your Honor. My client's rights were actually adjudicated. The issues for which the government seeks to attach liability to my clients was actually tried in my client's absence. To the bewilderment of the administrative law judge such that at the end of the first week, he said, this has been, and I'm using his words, it's in the record, a colossal waste of my time. I have not heard a single piece of evidence having to do with the government's prima facie case. I have not heard anything about union activities, authorization cards, animus, knowledge, nothing. This evidence may at some point in time appear to me to be germane, but at this point in time, it has been a colossal waste of my time. That is because to the bewilderment of everyone except for the general counsel, my client's liability as a single employer, single integrated business enterprise or joint venture was actually tried in my client's presence. And that's why I said there is no effective judicial review. The courts are legion in their recognition that the factual determinations of an administrative law judge and more importantly, the credibility determinations of an administrative law judge are virtually beyond judicial review. If documents attached to a motion influenced a trier of fact, then 15 days of trial, 30 witnesses, over a thousand pages of documentary evidence could not have but influenced the credibility determinations of the administrative law judge and the factual findings of the administrative law judge, which are effectively beyond judicial review. To answer your question previously, Your Honor, it is not district court cases out of Pennsylvania on which we rely. We rely primarily on Fay v. Dowds. I recognize that as a Second Circuit case. However, Fay has been recognized in this court three times. In Section 9 cases where there is no right to judicial review. But that is crafting precedent by anecdote rather than by law. Sorry? That is suggesting precedence by anecdote. I understand that. I've read it. I know what the facts in Fay were. I know what the holding was. And it has to do with the absence of judicial review. It doesn't have to do with the absence of judicial review. And importantly, Your Honor, importantly, Fay v. Dowds does not require the analytical step that Leadom v. Kine requires. Fay v. Dowds permits the district court to enjoin an unfair labor practice proceeding when the board acts to deprive fundamental constitutional rights. That does not require, the Fay analysis does not require the second step under Leadom, which is, is there appropriate and is there effective judicial review? The fact of the matter is, Your Honor, that my client's rights were substantively, substantially, and egregiously deprived during the proceeding. Evidence was taken without my client being there. Wait. I want to go back to your April 27 thing. I think you have not fairly characterized it. What the judge said there was that you had the right to recall specific relevant witnesses, but then the sentence that you alluded to, here's what it really said, the right to object to all evidence already introduced and the right to object to all previous rulings of the judge is denied. Well, that was ridiculous to even ask for that. The judge said you could recall relevant witnesses, if there were any. But you were asking to recall every single witness, object to every piece of evidence, and object to all previous rulings. That's just way out of bounds. So if you're basing your case of unfairness on that sentence, you don't persuade me. Wait. Let me say one other thing. District judges do this all the time. People come into cases late. They are stuck with the record. They have the right to reopen specific depositions on a showing of need. It's a case-by-case thing. Relevant witnesses are determined case-by-case. They go back. They may go back and take another siege of depositions to allow for fairness. But if you were to say that just because something has happened in the case already, and you come into the case midway, that that's a denial of due process, that can't be right. We didn't come into the case midway. What do you say to my point about April 27th? The judge simply denied you being able to reopen everything. And in making that denial, the judge not only eviscerated his prior oral order. That's not true. He said you had asked to do everything all over again. He said, no, you can do limited things all over again if you show a need. Why didn't you show the need? He also ignored the board precedent that served as his legal authority in granting the mid-trial amendment. Key Cole required specifically what we asked for, the right to object to all evidence that was introduced, the right to object to all testimony that was already introduced. He relied on that legal precedent in granting mid-trial consolidation. He then ignored the very precedent on which he relied. That is the answer to your question. It could not be. You're saying that the Key Cole decision by the board said that you had the right to make a blanket objection to everything, everything, 100 percent of everything that had gone before. Not just that we had a right, but that the mid-trial amendment was contingent, that the propriety of the mid-trial amendment was contingent upon recognition of that right. I'd ask the counsel for the board if that's what Key Cole really holds. So what if it does? Well, because it goes to the fundamental notion of due process, which this Court recognized in Bakersfield. The point, even if this happened in a United States district court, you can't just pop up here and say, look, the district judge just made an outrageous evidentiary call. It's depriving me of the right to cross-examine or object or do whatever to witnesses. You can't do that. You can at the end of the day come up here and say this trial stinks, and we will either agree or disagree. But we're not objecting to an evidentiary ruling, Your Honor. We're objecting to the deprivation of our fundamental due process rights, which include notice and a fair hearing. We weren't given any notice that our rights were being adjudicated. One good, sensible reason why you cannot achieve redress for all of the ills that you complain about at the end of the board's proceeding.  In judicial review before this Court. Well, we are not required to come before this Court. That's not my question. Okay. My question is, can you tell me why you cannot get full redress for all of the ills that you believe have been inflicted on your client at the end of the day in a petition for review of the decision, if you lose? Because if we lose, the court of appeals must give almost categorical deference to the ALJ's preference. It's not for denial of a constitutional right, which is what you're asserting. But we will be left at our peril to parse the record, to show what findings were made by contaminated, improper evidentiary record, and what you've got to parse a record in order to show you've had a violation of your constitutional rights. One and a half minutes ago, you were asserting that the Constitution was going to come down on our heads this very minute if we didn't let you object right now. I'd like to reserve the rest of my time for rebuttal if I may. I just have one little question. So Americo was brought in as the parent company. Americo was brought in as the parent company of U-Haul Nevada? Americo is not the parent company of U-Haul Nevada. Americo is a holding company that owns stock in U-Haul Co. of Nevada. All right. And U-Haul Co. of Nevada was the primary person charged with unfair labor practices, right? Well, it was the only respondent for 15 days. I understand all that. My clients were added not just on derivative claims. I know when they were added, and they were added in the Fifth Amendment complaint. What I'm trying to ask you is, is there any difference in the incentive of U-Haul Nevada to defend, cross-examine, object, and the entities you represent? Absolutely, Your Honor. What is that? The incentive is they're focusing on unfair labor practices that are contained in a charge and made in a complaint. They have no earthly idea that issues of single employer, single integrated enterprise, and joint venture, which require a completely unrelated evidentiary showing, are going to be tried. And U-Haul Co. of Nevada does not exist to protect the rights of Americo, U-Haul International, or Oxford Life. And I would ask the Court for a minute and 30 seconds that I requested to reply. Your time has expired, Mr. Gloss. We'll now hear from Ms. Goldstein. Good morning, Your Honors. May it please the Court, I am Dawn Goldstein, representing the National Labor Relations Board in the incident case. I'm going to keep this very short because it's quite clear that you understand our position clearly and precisely. You clearly understand that Myers is the major case governing the outcome and supporting the district court's dismissal of the complaint in this case. I do want to make some corrections to what the appellant said in his arguments. First of all, with regard to Myers, he said that at the time of Myers, that the constitutionality of the act was still in question. And if you look back, Jones and Laughlin, which found the act constitutional, had already been decided by the time Myers was decided. And Myers, in fact, cites to Jones and Laughlin. So the constitutionality of the act had already been well decided at that point. And, in fact, what they're saying about Myers really doesn't make any sense at all. What the appellant is saying is that if you have a jurisdictional claim, as was the case in Myers, or if you facially attack the constitutionality, then you have to wait through the entire administrative proceeding and wait until you get your 10-F review. But what he's saying is if you have a much more common question about procedural irregularities, then that's when you get to bring a grinding halt to the proceedings. That really turns Myers on its head, and it really can't be the case. And we cited a number of cases to support that, including three World War II-era Supreme Court cases, all of which found that due process claims have to wait for the end of the administrative proceeding, as long as there is a statutory review process, which, as you all know, of course there is here. I also want to ‑‑ let's see. I do want to note that for the record of what's happening in the administrative case here, it has been fully briefed before the board. There is a motion pending to reopen the record that has not been decided, but all the briefs are in, and it's a waiting decision by the board. And we will certainly notify the court as soon as that board decision issues, although it's our position that you can certainly affirm the district court's dismissal without waiting for that board decision. I next want to correct what he was saying about Key Coal. I'm citing to Key Coal at 240 NLRB, the first page is 1013 at Star Site 5. What the board said in Key Coal is, further, it was ruled that each and every corporation would be afforded the opportunity to fully litigate the single employer issue, including the right to examine and cross-examine all witnesses. Your Honor, that's exactly what happens here. The ALJ has permitted the new respondents to litigate the derivative liability issue completely, even to the point of recalling witnesses from the first three weeks that spoke to that issue. And as the appellant repeated, the whole first week was derivative liability, and they were given the opportunity to re-litigate that throughout the rest of the proceeding. And I just want to very briefly address the Ninth Circuit case cited to Fay and Dikta, the Teamsters Local 690 case. That was also a representation case where they similarly, just like Fay, they refused to enjoin what the board was doing because they didn't find any constitutional error. But Teamsters, I think interestingly, they did note a higher standard than Fay for finding a constitutional error. They noted that the standard should actually be a substantial showing of constitutional error. We don't think that there's any showing of either a non-transparently frivolous showing or even a substantial showing in any case, since Myers does resolve this case fully. Finally, I just want to wrap up a couple things about the ‑‑ I don't think you need to get to the merits of their due process claims, but should you feel that you do. This is not ‑‑ the first 15 days, bringing them in 15 days, that's not trying them in absentia. What that shows is a little bit of a misunderstanding about the way derivative liability works. That's not trying them in absentia any more than what occurred in Dena Artware, was the Supreme Court case which permitted the derivative liability litigation. In Dena Artware, the new respondents were not brought in until the compliance stage of the proceeding. There's simply no entitlement to be present from day one of the ULP hearing on the merits, as he is suggesting. Dena Artware holds that Royal Typewriter is very on Point 8th Circuit case, where the initial hearing on the merits had closed, and at that point, new respondents were brought in on the derivative liability issues, permitted to litigate the derivative liability, and at that point, the 8th Circuit enforced that decision. If the Court pleases, I think the Court understands our position very well, and may I ask if the Court has any further questions of me? I don't think so. I'm just going to wrap up in one minute. I'm going to point to the appellant's supplemental letter brief to this Court that was filed two weeks ago. On page 5 of that brief, they said, The fact that the Board has completed the hearing sought to be enjoined does not mute this matter because effective relief is available, and the actions of the Board, no matter how repugnant to constitutional principles, are not irreversible. Your Honor, the statement from the appellant fully supports our proposition that the hearing, this hearing did not need to be enjoined any more than the immediately pending Board decision needs to be enjoined. They have acknowledged that the Court can help them on 10-F review, if they are even an aggrieved party, which is unclear, and this Court can fully remedy any procedural errors at this point. They presented no case in 70 years of NLRA practice where a Board ULP proceeding has been enjoined for any reason, even though a couple of district court cases in the 7th Circuit are effectively later overruled by Gretka and Scolicote. So if it were the case otherwise, what it's doing is putting a preemptive strike weapon in the hands of Respondents to really hamper the enforcement, effective enforcement of the Act, disrupting the review process that Congress intended. For that reason, the district court's decision should be affirmed here. Okay. Thank you, counsel. The matter just argued will be submitted.
judges: Rymer, Wardlaw, Alsup